IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KELLEN POWELL, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Case No. |
| THE CITY OF ST. ANN, ) | (Class Action) |
| ) | |
| Defendant. ) | |
| ) | |

## CLASS ACTION COMPLAINT

### Introduction

This case is about the City of St. Ann jailing some of its poorest people and the poorest people in the St. Louis region because they cannot pay a small amount of money.  Kellen Powell was arrested on May 21, 2015 and iscurrently imprisoned by the City because he cannot afford to pay the amount of money generically set by the City of St. Annand its police department.

In St. Ann, most people arrested for minor ordinance violations are released immediately upon payment of a small cash bond.  The amount of the bond ranges from $150-$350 depending on the offense.  If a person is charged with multiple offenses, the fixed amount for each offense is added together to determine the total amount of cash required for release.Those arrestees who are too poor to afford $150remain in jail because of their poverty for at least three days, at which time St. Ann typically releases them for free.

On behalf of the many other arrestees subjected to the City's unlawful and ongoing post-arrest money-based detention scheme, the named Plaintiff challenges in this action the use of an

unlawful generic bail that operates to detain only the most impoverished minor arrestees.  The City's policy has no place in modern American law.

By and through his attorneys and on behalf of himself and all others similarly situated, the named Plaintiff seeks in this civil action the vindication of his fundamental rights, injunctive relief assuring that his rights and the rights of the other Class members will not continue to be violated, and a declaration that the City's conduct is unlawful.

### <u>Nature of the Action</u>[1]

1.       It is the policy and practice of the City of St. Ann to refuse to release ordinance violation arrestees from jail unless they pay a generically set "bond" amount.  That amount is $150 for most ordinance violations and $300 for Driving While Suspended.[2]  Because this sum is set generically by reference to the alleged offense of arrest, no individualized factors are considered, and anyone who cannot afford to pay is held in jail until they see a judge, which can be more than a week.  Plaintiff seeks declaratory, injunctive, and compensatory relief.

### <u>Jurisdiction and Venue</u>

2.       This is a civil rights action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, *et seq*., and the Fourteenth Amendment to the United States Constitution.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3.       Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

### <u>Parties</u>

---

[1] Plaintiff makes the allegations in this Complaint based on personal knowledge as to matters in which he has had personal involvement and on information and belief as to all other matters.

[2] Felony and misdemeanor arrestees are not subject to the jurisdiction of the City of St. Ann and are instead processed according to policies adopted by the State of Missouri.

4.      Named Plaintiff Kellen Powell is a 33-year-old homeless resident of St. Louis County. He represents himself as an individual and a Class of similarly situated people all subject to the City's post-arrest money-based detention scheme.

5.      Defendant City of St. Ann is a municipal corporation organized under the laws of the State of Missouri.   The City operates the St. Ann Police Department and the St. Ann Municipal Court.

## Factual Background

**A.      The Named Plaintiff's Arrest**

6.      Kellen Powell is a 33 year old homeless citizen of St. Louis County.

7.      Mr. Powell was arrested by St. Ann police on May 21, 2015.  St. Ann court and St. Ann jail refuse to give out information confirming charges.  Upon information and belief, Mr. Powell was charged with the failure to display a license plate and driving while suspended.  He was arrested on these new charges.

8.      Mr. Powell was taken to jail and told that he would be released if he paid cash to the City of St. Ann in the amount of $300.  He was told that he would be kept in jail until Thursday May 28, 2015 unless he paid $300. *See* Exhibit 1, Declaration of Kellen Powell.

9.   Mr. Powell is indigent. He is employed part-time earning less than $300 per week at the time of his arrest. He does not own any real property.

10.     Mr. Powell is currently homeless.

11.     He has not been brought to court for an initial appearance. The earliest that Mr. Powell would be brought to court for a first appearance is May 28, 2015 nearly a week after his arrest.  Pursuant to City policy, he must remain incarcerated because he is too poor to buy his freedom.

B.    **The City's Policies and Practices**

12.    The named Plaintiff would be released immediately by the City of St. Ann if he or a family member paid the amount of cash set by the City of St. Ann.

13.    The treatment of the named Plaintiff and other Class members is caused by and is representative of the City's post-arrest detention policies and practices.

14.    As a matter of policy and practice, when the City of St. Ann Police Department makes an arrest for a minor ordinance violation, officers inform the arrestee at booking that the person will be released immediately if the person pays cash set by a predetermined amount.[3] The arrestee is told that the arrestee will remain in jail if the arrestee is not able to make that payment.

15.    An arrestee too poor to buy his way out of jail could wait more than a week to see a judge for a bond reduction if police officers do not decide to release him for free after three days as is the custom throughout St. Louis County.

16.    After an arrest, City of St. Ann police do not deviate from their preset amount of a minimum $150 and maximum of $350 depending on the ordinance violation.

17.    Unlike many other cities, the City of St. Ann does not allow post-arrest release on recognizance or with an unsecured bond (in which a person would be released by promising to pay the scheduled amount if the person later does not appear).  Instead, City officials require that the cash payment amount be made up front.

18.    The City of St. Ann has 13,000 residents and comprises 3.1 miles.  The Police Department filed over 28,000 municipal ordinance violation cases in 2013. As of September of 2014, the City of St. Ann had over 14,000 outstanding warrants for arrest or approximately 1.1

---

[3] Although commercial bail bonds are widely available in the St. Louis region, the City of St. Ann does not allow for their use. Thus, any person held by the City of St. Ann must pay the entire bond in order to buy her release.

for every resident of the town. As a result of this high volume policing, St. Ann's municipal court produces revenues of over $3,000,000 from court costs and fines.

19.     Many of St. Ann's minor ordinance violation arrestees are released soon after arrest upon payment of the scheduled amount of cash.  Some remain detained for varying lengths of time until they or their families are able to borrow sufficient amounts of money or arrange for third-party payment.  Others, like the named Plaintiff, who are too poor even to find anyone to pay the cash bond for them, are kept in jail until they are brought to court or until police decide to release them.

20.     Because of St. Ann's unusual and illegal policies, it is difficult for the public to obtain accurate details concerning how many impoverished St. Ann arrestees are unable to buy their release each week.

### Class Action Allegations

21.     The named Plaintiff brings this action, on behalf of himself and all others similarly situated, for the purpose of asserting the claims alleged in this Complaint on a common basis.

22.     A class action is a superior means, and the only practicable means, by which the named Plaintiff and unknown Class members can challenge the City's unlawful poverty-based post-arrest detention scheme.

23.     This action is brought and may properly be maintained as a Class action pursuant to Rule 23(a)(1)-(4) andRule 23(b)(2) of the Federal Rules of Civil Procedure.

24.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

25.     The Plaintiff proposes one Class seeking declaratory and injunctive relief.  The

Declaratory and Injunctive Class is defined as:  all arresteesunable to pay for their release pursuant to St. Ann's preset bail amount who are or who will become in the custody of St. Ann.

### A.      Numerosity.  Fed. R. Civ. P. 23(a)(1)

26.      The City of St. Ann Police Department filed over 28,000 cases for ordinance violation offenses in 2014.[4] Each arrestee is presented with the City's standard cash bond choice of pay or jail.  Arrestees are held in jail for varying lengths of time depending on how long it takes them to make the cash payment that the City requires for their release.

27.      Some arrestees are able to pay for release immediately.  Others are forced to wait a day or two days until they or family members can make the payment.  Others are not able to pay or to find someone else to pay for them even after a few days. Still, others, as is the case for Mr. Powell, are held for a week without seeing a judge.

28.      The number of current and future arrestees subjected to this policy if it is not enjoined is well over forty.

### B.      Commonality.  Fed. R. Civ. P. 23(a)(2).

29.      The relief sought is common to all members of the Class, and common questions of law and fact exist as to all members of the Class.  The named Plaintiff seeks relief concerning whether the City's policies, practices, and procedures violate the rights of the Class members and relief mandating the City to change its policies, practices, and procedures so that the constitutional rights of the Class members will be protected in the future.

30.      These common legal and factual questions arise from one central scheme and set of policies and practices: the City's post-arrest detention schedule.  The City operates this scheme openly and in materially the same manner every day.   The material components of the scheme do not vary from Class member to Class member, and the resolution of these legal and

---

[4] The City appears to have been on a similar pace of arrests in 2015, but final statistics are not yet publicly available.

factual issues will determine whether all of the members of the class are entitled to the constitutional relief that they seek.

Among the most important, but not the only, common questions of fact are:

- Whether St. Ann has a policy and practice of using a predetermined bail amount to determine the amount of money necessary to secure post-arrest release;
- Whether St. Ann requires that scheduled amount of money to be paid up front before it will release a person from jail;
- What standard post-arrest procedures St. Ann performs on ordinance violation arrestees.

31.    Among the most important common question of law are:

- Whether the practice of setting standard amounts of cash required up front to avoid post-arrest detention violates the Fourteenth Amendment's due process and equal protection clauses.

**C.     Typicality.  Fed. R. Civ. P. 23(a)(3).**

32.    The named Plaintiff's claims are typical of the claims of the other members of the Class, and he has the same interests in this case as all other members of the Classes that he represents.  Each of them suffers injuries from the failure of the City to comply with the basic constitutional provisions: they are each confined in jail because they could not afford to pay the City's standardized cash bond amount.  The answer to whether the City's scheme of policies and practices isunconstitutional will determine the claims of the named Plaintiff and every other Class member.

33.    If the named Plaintiff succeeds in the claim that the City's policies and practices concerning post-arrest detention violate his constitutional rights, that ruling will likewise benefit every other member of the Class.

**D.     Adequacy.  Fed. R. Civ. P. 23(a)(4).**

34.    The named Plaintiff is an adequate representative of the Class because his interests in the vindication of the legal claims that he raises are entirely aligned with the interests

of the other Class members, who each have the same basic constitutional claims.  He is a

member of the Class, and his interests coincide with, and are not antagonistic to, those of the

other Class members.

35.     There are no known conflicts of interest among members of the proposed Class,

all of whom have a similar interest in vindicating their constitutional rights in the face of their

unlawful treatment by their local government.

36.     Plaintiffs are represented by attorneys from Equal Justice Under Law and

Archcity Defenders,[5] who have experience in litigating complex civil rights matters in federal

court and extensive knowledge of both the details of the City's scheme and the relevant

---

[5]ArchCity Defenders is a non-profit public interest law firm based in Saint Louis. It has represented the poor and homeless in municipal court cases for the past five years and is an expert on the ways in which Ferguson's illegal practices and policies make and keep people poor. ArchCity Defenders also published an extensive report detailing similar practices and policies in the cities of Bel-Ridge and Florissant. The report is available at www.archcitydefenders.org.

    Counsel from ArchCity Defenders was recently lead counsel in a case in the Eastern District of Missouri restricting the use of chemical munitions on peaceful protesters, is co-counsel on two federal class actions alleging the operation of debtors' prisons in Ferguson and Jennings, Missouri, and is co-counsel in an additional nine state class action suits alleging the imposition of illegal fees and fines in various municipal courts in the St. Louis County region.

Equal Justice Under Law is a non-profit civil rights organization based in Washington, D.C.  The organization is funded in part by the Harvard Law School Public Service Venture Fund.

    Counsel from Equal Justice Under Law was recently lead counsel in a landmark federal civil rights class action lawsuit against the City of Montgomery for engaging in similar practices.  In that case, the United States District Court for the Middle District of Alabama issued a preliminary injunction condemning and forbidding the City's similar jailing of impoverished people with unpaid debts, and the case was successfully settled after the City agreed to compensate the Plaintiffs and to the entry of an injunction reforming its entire municipal debt-collection regime.  See Mitchell et al. v. City of Montgomery, 14-cv-186 (M.D. Ala. 2014).

    Counsel was also the lead counsel in a recent similar challenge to the fixed "bail schedule" scheme employed by the City of Clanton, Alabama.  See Varden et al. v. City of Clanton, 15-cv-34 (M.D. Ala 2015). Although that case is ongoing, the City of Clanton has agreed to end its use of a fixed cash bail system for new arrestees.

    Counsel is also the lead counsel in two cases involving the treatment of impoverished people in St. Louis County municipal courts.  See Jenkins et al. v. City of Jennings, 15-cv-252-CEJ (E.D. Mo. 2015); Fant et al. v. City of Ferguson, 15-cv-253-AGF (E.D. mo. 2015).

    Counsel was also previously the lead attorney in a constitutional civil rights class action against the District of Columbia in the United States District Court for the District of Columbia.  See 1:13-cv-00686-ESH (D.D.C. 2013).  In that litigation, undersigned counsel was responsible for investigating and building the complex constitutional claims against the District of Columbia, authoring the legal filings in the class action case, and negotiating a Memorandum of Understanding with the District of Columbia Attorney General that stayed the class action litigation and began to implement sweeping changes to the city's policies and practices governing the civil forfeiture of property by the District's Metropolitan Police Department—procedures that affect thousands of putative class members every year.

constitutional and statutory law.

37.     ArchCity Defenders and Equal Justice Under Law have extensive experience with the functioning of the entire municipal court system in the St. Louis County region through their representation of numerous impoverished people in the Cities of St. Ann, Ferguson, Jennings, Pine Lawn, Wellston, Fenton, Beverly Hills, and other municipalities.

38.     The efforts of Class counsel have so far included extensive investigation over a period of months, including numerous interviews with witnesses, court employees, jail inmates, families, attorneys practicing in municipal courts throughout the region, community members, statewide experts in the functioning of Missouri municipal courts, and national experts in constitutional law, post-arrest procedure, law enforcement, judicial procedures, criminal law, pretrial services, and jails.

39.     Class counsel have also observed numerous courtroom hearings in municipalities across the region in order to compile a detailed understanding of state law and practices as they relate to federal constitutional requirements. Counsel have studied the way that these systems function in other cities in order to investigate the wide array of lawful options in practice for municipalities.

40.      As a result, counsel have devoted enormous time and resources to becoming intimately familiar with the City's scheme and with all of the relevant state and federal laws and procedures that can and should govern it.Counsel has also developed relationships with many of the individuals and families most victimized by the City's practices.The interests of the members of the Class will be fairly and adequately protected by the Plaintiffs and their attorneys.

**E.    Rule 23(b)(2)**

41.     Class action status is appropriate because the City, through the policies, practices,

and procedures that make up itspost-arrest detention scheme has acted in the same unconstitutional manner with respect to all class members.  The City of St. Ann has created and applied a simple scheme of post-arrest detention and release: it charges a minimum of $150 for every ordinance violation arrestee and $350 for each driving while suspended.  The City releases those who can pay and detains those who cannot.  The detained arrestees are either released pursuant to police policy of typically releasing detainees for free after three days.  Otherwise, arrestees are eventually taken to court on one of the two days per month that St. Ann conducts court.

42.     The Class therefore seeks declaratory and injunctive relief to enjoin the City from continuing in the future to detain impoverished arrestees who cannot afford cash payments. Because the putative Class challenges the City's scheme as unconstitutional through declaratory and injunctive relief that would apply the same relief to every member of the Class, Rule 23(b)(2) certification is appropriate and necessary.

43.     Injunctive relief compelling the City to comply with these constitutional rights will similarly protect each member of the Class from being subjected to the City's unlawful policies and practices.  A declaration and injunction stating that the City cannot use a fixed cash "bail schedule" that jails indigent arrestees but frees arrestees with financial means would provide relief to every member of the Class.  Therefore, declaratory and injunctive relief with respect to the Class as a whole is appropriate.

44.     Plaintiff seeks the following relief and hereby demands a jury in this cause for all matters so appropriate.

### Claims for Relief

**Count One:  Defendant City of St. Ann Violates Plaintiff's Rights By Jailing Him Because He Cannot Afford A Cash Payment Prior to a First Court Appearance.**

45.     Plaintiff incorporates by reference the allegations in paragraphs 1-45.

46.     The Fourteenth Amendment's due process and equal protection clauses have long prohibited imprisoning a person because of the person's inability to make a monetary payment. Defendant St. Ann violates Plaintiff's rights by placing and keeping him in jail when he cannot afford to pay the amount of cash set by the generic fixed bail "schedule" used by St. Ann.

### Request for Relief

WHEREFORE, Plaintiff and the other Class members request that this Court issue the following relief:

a.  A declaratory judgment that the Defendant City violates the named Plaintiff's and Class members' constitutional rights by jailing them and keeping them in jail when they cannot pay a generically set amount of money to secure release after an arrest;
b.  An order and judgment preliminarily and permanently enjoining Defendant St. Ann from enforcing the unconstitutional post-arrest money-based detention policies and practices against the named Plaintiff and the Class of similarly situated people that he represents;
c.  A judgment individually compensating the individual named Plaintiff for the damages that he suffered as a result of the City's unconstitutional and unlawful conduct, including damages resulting from his confinement in jail;
d.  An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and proper.

Respectfully submitted,

*/s/ Thomas B. Harvey*
Thomas B. Harvey MO61734
Executive Director and Co-Founder

*/s/ Michael-John Voss*
Michael-John Voss (MBE #61742)
Co-Founder and Managing Attorney

ArchCity Defenders
812 N. Collins
St. Louis, MO 63102
(314) 482-3342
(314) 621-8107
tharvey@archcitydefenders.org

_/s/ Alec Karakatsanis_
Alec Karakatsanis (E.D.Mo. Bar No. 999294DC)

Co-Founder
Equal Justice Under Law
916 G Street, NW Suite 701
Washington, DC 20001
(202)-681-2409
alec@equaljusticeunderlaw.org

_Attorneys for Plaintiffs_

12